Good morning, Your Honor. My name is Ramon Ferrer, and I'm appearing on behalf of Mr. Iku Balu's law suit. You may proceed. What has to be decided today is how to interpret a statute. It is a Hawaii statute that concerns leaving the scene of an accident, would be the common term. Normally, there's been two approaches. There's a categorical approach and a modified categorical approach. Now, in the categorical approach, the court will look at the statute. And I did find a case where Tega v. Mendez where they'll also use judicial interpretations of that statute to determine whether a crime in this case involves moral turpitude. Counsel, what's the impact of Duenas-Alvarez, the recent Supreme Court case on this? Doesn't that argue in favor of applying the categorical approach in this instance? Yes, it does. And also something about that case that I found, it seems like the statute would have to pretty much say that that conduct would be moral turpitude. I think in this case, they're going a little bit outside of that for the services or the Department of Homeland Security. It's going a little bit outside and saying this particular statute means there is moral turpitude. Has the Supreme Court of Hawaii ever interpreted this statute in such a way that there was not moral turpitude involved? Well, they never actually mentioned it. I did find two cases that were pretty extreme in the facts where I think one was involved in negligent homicide and the other one involved an attempted homicide, but the language never came down saying, no, the conduct of this statute involves moral turpitude. Unlike the California case, which the court specifically said, yes, this is a crime of moral turpitude, leaving the scene of an accident, trying to avoid – And what are these cases to which you make reference? Okay, there's – well, Hawaii v. Chen just talks about the sentence being reckless. And that was cited in your brief, right? Yes. And then in my reply brief, I cited – State v. Edu Phi. State v. what? State v. Edu Phi. That's in page three of my reply brief. And you claim that neither one of those cases in the court did not find moral turpitude was involved? Well, no, they didn't. I don't believe they did. And also State v. Isamura, which contains there's three counts of negligent homicide involved in that case, failure to stop, having an own container of alcohol. The Hawaii Supreme Court never did mention that moral turpitude was involved in violating the statute, which is at issue here, which is a hit and run for the statute, for Hawaii Revised Statute Section 291C-13. There is an argument from the government that this is tantamount to fraud. In other words, if you leave the scene of an accident, you're doing it primarily to avoid getting exposed to liability, perhaps even arrest or what have you. What's your response to the fraud assertion here? And if it is fraud, why we have many cases that seem to hold that that is moral turpitude. But what's your response to the government's position? Well, my response to that, there could be circumstances in this case that would have negated the fraud. We will never know that because, I mean, that couldn't be brought up. I don't know if you would permit me to bring it up, but I can bring up a very important instance in this case, which would knock the whole thing out. And that's that my client was injured. He was taken out by his friends. His car was totaled. He was injured himself. He found the next day at home, you know, in pain in bed. That's not in the record, is it, counsel? No, it's not, unfortunately. But what I'm saying, though, is the fact that that points out that, in other words, this is being interpreted as a strict liability statute. Could it be fraud or could it not be fraud? We don't know in his case. And that's my response to it. Well, Mr. Farrick, tell us in more general terms, what is missing from the Hawaii statute that prevents this crime from being a crime involving moral interpretation? Well, I'll rely on the Cereso v. Kiesler case. I was able to find a breeze in the case, and it was decided. He raised a point which I didn't raise, but I think it's very important. That statute punishes a broad band of negligence. It punishes intentional, actually reckless conduct. We don't know what it punishes, though. In other words, if negligent leave the scene of an accident, is that a crime of moral turpitude? And I think the state of Hawaii statute has the same problem. It doesn't really address specifically what kind of conduct. What are you saying? It doesn't require some kind of an evil state of mind? Oh, I would say so. I would say that it requires an evil and depraved, which is normally what is found in crimes of moral turpitude. Now, this statute doesn't really require that. It just requires leaving the scene of an accident, not reporting it, not giving evidence, and not written in this case. One of the things that the Hawaii statute requires and is designed to prevent is that the person should not leave the scene of the accident because it's the person's duty to comply with 291C-14, which is to render assistance to an injured person. Right. In other words, if you flee the scene of an accident when someone is injured and leave an injured person there without help, isn't that involved with moral turpitude? I mean, that's a requirement of the statute, isn't it? In other words, someone was injured in this accident, right? I mean, besides your client. Yes, he was. All right. And so your client left the scene of the accident, leaving the injured person there, right, without help. Is that right? That's true. Right? And that's what the statute is designed to prevent. Now, why doesn't that involve moral turpitude, to leave somebody injured, you know, lying on the street while you run away? Well, on the cases I found, normally moral turpitude goes a little bit beyond that. They usually have found a duty between the people involved. In other words, let's say a parent and a child. Well, the Hawaii statute provides a duty under 291C-14 that says that, you know, you shall render aid to any person injured in the accident. It provides for it, but I don't think that drives the level of depraved conduct or evil intent on his side. He wasn't deliberately trying to hurt anybody. He left the scene of an accident. Counsel, you mentioned the Cereso case. In all likelihood, we're going to have to defer submission on this case until that decision is made by another panel. But did you have a chance to compare the statutes between the California statute in that case and the Hawaii statute in this case? Are they pretty much identical or not? They're very close. But nothing significantly different? No, not that I could find, except that I believe the California statute, they talk more about the punishment. They specifically laid out this is what's going to happen if you do this. And the Hawaii statute doesn't really do it. But you're not making an argument here that the statutes are so different that we should ignore that other case? No, I'm not making that argument. Okay. Anything further? I know that's all you have. Thank you, Counsel. We'll hear from the government. You may proceed. Good morning. My name is Catherine Moore, and I represent the respondent, the United States Attorney General. Your Honors, the issue in this case is whether the petitioner's conviction is categorically a crime of moral turpitude under the Immigration and Nationality Act. The IJA did not make a modified examination. That is correct, Your Honor. The only issue is under the United States v. Taylor categorical approach, whether the full range of conduct encompassed by this statute would comprise a crime involving moral turpitude. Now, the offensive issue in this case is accidents involving substantial bodily injury. Under this statute, the driver who is involved in an accident that results in substantial bodily injury to another person must stop at the scene of the accident to provide his identification and to render aid to the injured person. Crime of moral turpitude is not defined by the Immigration and Nationality Act. However, it is defined by the Attorney General and as well by this Court as conduct that is inherently base, vile, depraved, and contrary to accepted rules of morality and duties owed between persons. The conduct prescribed by this statute is morally reprehensible and it's intrinsically wrong, and this Court should find that this is a crime involving moral turpitude. What do we know from facts in the record? We heard something that was outside the record, but in terms of what's in the record, what do we know about the particular event here, the accident in this case? Your Honor, under the categorical Taylor approach, we can't look at the facts underlying the fact of conviction. I'm fully aware of that, Counsel. I want to know what is in this record in terms of what actually did happen. Your Honor, um... On January 1st, 2003, the petitioner pled guilty to three offenses. Realistically, Counsel, the record doesn't really have anything to deal with the modified categorical approach, does it? No, Your Honor. I believe that the record does have a lot of information from the underlying criminal proceedings. But in this case, to some degree, unless we were to send it back for a new hearing, rises and falls on whether it falls within the categorical approach. Is that correct? As presently constituted. As presently constituted, we're looking at the categorical approach. If it would be necessary to address this crime under the modified categorical approach, whether or not there is sufficient facts in the record really is an issue that the immigration judge would have to consider. Well, sure, under Ventura, that's absolutely correct. But I take it, then, your answer to my question a few moments ago is what? Your question about what happened, Your Honor? Yeah. Your Honor? No, no. My question is what does the record tell us about what happened? I guess it doesn't tell us very much, does it? The answer is not much, right? No, Your Honor. The record tells us what he has. The record contains letters from the petitioners, a letter from the victim describing what happened. It also contains descriptions from the officers who investigated the accident. All right. Well, there's some detail there, but we're still functioning on the categorical analysis. Yes, Your Honor. Now, do you want to develop your fraud argument? Yes, Your Honor. Well, before you go to the fraud argument, let me ask you to respond just on a hypothetical basis, because this has to do with the full range of conduct covered by the statute. Mr. Ferrer says, the record doesn't show it, but his client was himself injured and was carried away by his friend. All right? Now, assuming, not that that's a fact in the record, but that's a hypothetical possibility that could happen under the statute. So if the statute covers that kind of conduct, it's overbroad, isn't it? No, Your Honor. This is not a strict liability statute. This is a general intent statute, and under the Hawaiian Penal Code, the requisite mens rea would be reckless, knowing, or intentional conduct. So we have to presume that in the criminal proceedings, the criminal court found that there was a requisite criminal intent case. So are you saying the statute itself contains a mental element? Yes, Your Honor, that is correct. And that's contained in the Hawaii Revised Statute, Section 702-204. And so you're saying, under that statute, the hypothetical I just related to you would not be a crime under that statute? Under the hypothetical that you just related to me, the defense that somebody was not conscious, it did not act with at least reckless intent. He didn't say not conscious. No, he didn't say not conscious. He was carried away by his friend. I mean, he could be conscious, but say, you know, unable to resist. Or thought he was in need of help. Your Honor, again, that defense goes to the criminal conviction. We cannot collaterally attack the fact that his criminal conviction is convicted of these two things. No, I'm just talking about the full range of conduct covered by the statute. Yes, Your Honor, and I think... We have to look at that from a categorical analysis, do we not? Yes, Your Honor, and the question would be whether or not, under those circumstances, he acted with reckless, knowing, or intentional intent. Perhaps under those circumstances, he would not have been convicted under this statute. But maybe you're saying that once there's a guilty plea, then we have to assume criminal intent. Yes, Your Honor, under United States v. Taylor, we have to assume that he has committed the offense of which he has been convicted. Now, give me again the statutory citation that contains the intent element. Yes, Your Honor, it's Hawaii Revised Statute, Section 702-204, and also the case Hawaii v.— —-204. Yes, Your Honor, 702-204, and also the case Hawaii v. Chen also discusses the requisite intent  Now, opposing counsel cited Hawaii v. Chen. Yes, Your Honor, as well as the government. And so are you, too. Yes, Your Honor. Which way does it point? If both sides cite the same case, which side has the better argument? Your Honor, the government has the better argument. For the reason that? No Hawaiian case has ever addressed the question of whether a conviction under this statute comprises a crime involving moral turpitude. It simply doesn't address it. However, the Hawaiian courts have addressed what the purpose of this statute is. The purpose of the statute, pursuant to State v. Chen, is to assess liability, to resolve questions of civil liability, and to ensure that accident victims receive prompt assistance in order to minimize their injuries. What impact, if any, does Duenas-Alvarez's new Supreme Court case have on this situation? If you assume arguendo that the man who was charged in this case was taken away by his friends, what impact, if any, should that have on our analysis in light of Duenas-Alvarez? Your Honor, pursuant to Duenas-Alvarez, this court has to require a realistic probability, and not just a theoretical possibility, that the State of Hawaii would apply its statute to benign conduct. But in this case, if you assume arguendo that this happened, it's not a theoretical thing, it's a fact. If somebody is carried away, admittedly he pleaded. Given the fact that he pled in this particular instance, I'm trying to understand the government's position. How do we reconcile Duenas-Alvarez with this issue? If he pled, but the fact is that he was taken away, it's not theoretical, it's actual. Are we allowed to get beyond the statute in this, and in fact do a modified categorical? Or are we just stuck with what's on the four walls of the statute? No, Your Honor. We have to reject his claim, which isn't supported by the record. His claim, which is not, there's no finding of fact by any court that he was carried away unconscious. And he cannot assert that fact here, and then presume that this statute is somehow overly broad, and reaches conduct that wouldn't be morally opportunist. Counsel, you have less than a minute. I'd like to ask you, on the Cereso case, have you looked at that at all? Yes, Your Honor, and the statutes are very similar. And as far as I'm aware, the government has been asked to submit supplemental briefing on the Cereso case to address the Navarro-Lopez decision. We're just providing notice to the parties that it is quite possible, I don't know that we've formally decided it yet, but it's quite possible that we may have to defer submission of this case until another Ninth Circuit panel decides the Cereso case. All right. I see that my time has expired. Thank you very much, Counsel. The case just argued will be submitted for decision,
judges: O'scannlain, Tashima, Smith